Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| MORTGAGE ASSETS MANAGEMENT LLC<br><br>Apelado<br><br>v.<br><br>MARÍA ISABEL CORTÉS GONZÁLEZ T/C/C MARÍA I. CORTÉS GONZÁLEZ, ESTADOS UNIDOS DE AMÉRICA<br><br>Apelante | TA2025AP00156 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso número: BY2024CV00352<br><br>Sobre: Ejecución de Hipoteca: Propiedad Residencial |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 8 de septiembre de 2025.

Comparece la parte apelante, María I. Cortés González, y nos solicita que revoquemos la *Sentencia en Rebeldía* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 6 de mayo de 2025, notificada el 15 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró Ha Lugar la acción de epígrafe y ordenó la ejecución de la hipoteca constituía por la parte apelante.

Por los fundamentos que exponemos a continuación, se revoca el dictamen apelado.

**I**

El 24 de enero de 2024, Cascade Funding Mortgage Trust HB2 (Cascade) incoó una *Demanda* sobre ejecución de hipoteca revertida en contra de María I. Cortés González (Cortés González o apelante)

y a los Estados Unidos de América.[1] En lo pertinente, Cortés González fue emplazada personalmente el 18 de marzo de 2024.[2]

A petición de Cascade,[3] el 2 de abril de 2024, notificada el 4 del mismo mes y año, el Tribunal de Primera Instancia refirió el caso al Centro de Mediación de Conflictos del Poder Judicial.[4]

Posteriormente, el 18 de abril de 2024, Cascade presentó una *Moción Solicitando Paralización*, en la cual le informó al tribunal que las partes estaban en conversaciones transaccionales.[5] Atendida la solicitud, el 22 de abril de 2024, el foro primario notificó una *Orden* mediante la cual declaró Ha Lugar la referida moción y, en su consecuencia, paralizó los procedimientos por noventa (90) días.[6]

Transcurrido dicho periodo, el 22 de julio de 2024, Cascade sometió una *Moción Informativa y en Solicitud de Sentencia de Paralización*.[7] En síntesis, informó que Cortés González se acogió a una de las alternativas disponibles para la mitigación de pérdidas. En virtud de ello, solicitó que se paralizaran los procedimientos judiciales. Evaluada la solicitud, el mismo día, el foro *a quo* emitió y notificó una *Sentencia de Paralización*.[8]

El 3 de diciembre de 2024, Cascade presentó una *Moción Solicitando la Continuación de los Procedimientos*.[9] Alegó que Cortés González incumplió con los acuerdos establecidos en el plan de pago. En vista de ello, solicitó que se continuara con los procedimientos judiciales. Atendida la solicitud, el mismo día, el foro de origen ordenó la continuación de los procedimientos.[10]

---

[1] Entrada Núm. 1 del Caso Núm. BY2024CV00352 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] Entrada Núm. 5 del Caso Núm. BY2024CV00352 en el SUMAC.
[3] Entrada Núm. 4 del Caso Núm. BY2024CV00352 en el SUMAC.
[4] Entrada Núm. 6 del Caso Núm. BY2024CV00352 en el SUMAC.
[5] Entrada Núm. 7 del Caso Núm. BY2024CV00352 en el SUMAC.
[6] Entrada Núm. 8 del Caso Núm. BY2024CV00352 en el SUMAC.
[7] Entrada Núm. 11 del Caso Núm. BY2024CV00352 en el SUMAC.
[8] Entrada Núm. 13 del Caso Núm. BY2024CV00352 en el SUMAC.
[9] Entrada Núm. 14 del Caso Núm. BY2024CV00352 en el SUMAC.
[10] Entrada Núm. 15 del Caso Núm. BY2024CV00352 en el SUMAC.

Al día siguiente, Cascade instó una *Moción Solicitando Referido a Mediación.*[11] En esencia, solicitó que se citaran a las partes a una vista de mediación compulsoria, a los fines de informarle a Cortés González de cualquier alternativa o remedio disponible que evitara la ejecución de su residencia principal, conforme a la *Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal,* Ley Núm. 184-2012, según enmendada, 32 LPRA sec. 2881 *et seq.*

Examinada la moción, el mismo día, el foro apelado declaró Ha Lugar la solicitud mediante *Orden*[12] y refirió a las partes al Centro de Mediación de Conflictos del Poder Judicial.[13]

A petición de Cascade,[14] el 7 de febrero de 2025, notificada el 11 del mismo mes y año, el foro juzgador sustituyó a la parte demandante por Mortgage Assets Management, LLC (MAM o apelado).[15]

El 11 de abril de 2025, compareció el Centro de Mediación de Conflictos para informar el resultado del caso referido.[16] Indicó que se citaron a las partes a mediación mediante videoconferencia en cuatro (4) fechas, pero Cortés González estuvo representada por Jorge R. Miranda Cortés, quien solo compareció a dos (2) de las citas. Señaló, además, que de la información suministrada por MAM, surgía que Cortés González no había comenzado la entrega de documentación requerida para la evaluación de mitigación de pérdida, según previamente ordenado. Informó que, en vista de la ausencia de Cortés González a varias citas en el proceso de mediación por videoconferencia, daba por concluida su

---

[11] Entrada Núm. 16 del Caso Núm. BY2024CV00352 en el SUMAC.
[12] Entrada Núm. 17 del Caso Núm. BY2024CV00352 en el SUMAC.
[13] Entrada Núm. 18 del Caso Núm. BY2024CV00352 en el SUMAC.
[14] Entrada Núm. 19 del Caso Núm. BY2024CV00352 en el SUMAC.
[15] Entrada Núm. 20 del Caso Núm. BY2024CV00352 en el SUMAC.
[16] Entrada Núm. 21 del Caso Núm. BY2024CV00352 en el SUMAC.

intervención. En virtud de lo anterior, el mismo día, MAM solicitó la continuación de los procedimientos judiciales.[17]

Pendiente lo anterior, el 16 de abril de 2025, MAM instó una *Moción en Solicitud de Anotación de Rebeldía.*[18] En esencia, arguyó que había trascurrido un periodo razonable sin recibir por parte de Cortés González o por conducto de su representación legal alegación responsiva. Según adujo, Cortés González tampoco solicitó prórroga para comparecer. En vista de ello, solicitó que se le anotara la rebeldía a Cortés González y se dieran por admitidas las alegaciones contenidas en la *Demanda,* en virtud de la Regla 45 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.

El 21 de abril de 2025, el foro sentenciador ordenó la continuación de los procedimientos.[19]

Posteriormente, el 23 de abril de 2025, MAM reiteró su solicitud de anotación de rebeldía.[20] Examinada la solicitud, el foro primario notificó al día siguiente una *Orden* mediante la cual anotó la rebeldía de Cortés González.[21]

Así las cosas, el 6 de mayo de 2025, notificada el 15 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia en Rebeldía* que nos ocupa.[22] En lo pertinente, el foro *a quo* declaró Ha Lugar la acción de epígrafe y ordenó la ejecución de la hipoteca constituía por Cortés González en garantía de un pagaré hipotecario. En consecuencia, condenó a Cortés González a pagar la deuda líquida, vencida y exigible a MAM mediante la venta en pública subasta de la propiedad hipotecada.

Subsiguientemente, el 29 de mayo de 2025, MAM solicitó la paralización de los procedimientos.[23] Indicó que le aprobaron a

---

[17] Entrada Núm. 22 del Caso Núm. BY2024CV00352 en el SUMAC.
[18] Entrada Núm. 23 del Caso Núm. BY2024CV00352 en el SUMAC.
[19] Entrada Núm. 24 del Caso Núm. BY2024CV00352 en el SUMAC.
[20] Entrada Núm. 25 del Caso Núm. BY2024CV00352 en el SUMAC.
[21] Entrada Núm. 27 del Caso Núm. BY2024CV00352 en el SUMAC.
[22] Entrada Núm. 29 del Caso Núm. BY2024CV00352 en el SUMAC.
[23] Entrada Núm. 32 del Caso Núm. BY2024CV00352 en el SUMAC.

Cortés González una extensión de riesgo como alternativa de mitigación de pérdidas. En vista de ello, informó que, por el momento, no continuaría con los procedimientos de ejecución de *Sentencia en Rebeldía*. Atendida la solicitud, el foro de origen paralizó los procedimientos.[24]

El 30 de mayo de 2025, Cortés González instó una *Urgente Moción Asumiendo Representación Legal y Solicitando Reconsideración*.[25] En síntesis, alegó que inexplicablemente dos de las últimas tres mociones presentadas por MAM no fueron recibidas oportunamente, pues estas llegaron después de la notificación de la *Sentencia en Rebeldía*, en clara violación al debido proceso de ley. Incluyó junto a su moción varios anejos y explicó que, si bien en la moción de anotación de rebeldía se certificaba que fue notificada el mismo día (16 de abril de 2025), el sobre en el cual llegó a su dirección postal acreditaba que dicha moción fue llevada al correo el 22 de mayo de 2025. Detalló que el matasello del correo (*postmark*) en tinta negra evidenciaba que MAM depositó dicha moción, y la posterior solicitando la sentencia en rebeldía, el 22 de mayo de 2025. Arguyó que, como cuestión de hecho, los sobres con las referidas mociones fueron recibidos después de dictada la *Sentencia en Rebeldía*, la cual fue notificada el 15 de mayo de 2025. Según adujo, MAM la mantuvo en la obscuridad sobre las presentaciones de dos mociones claves en el proceso: una que solicitaba la anotación de rebeldía y otra que solicitaba sentencia en rebeldía. Enfatizó que dichos escritos fueron notificados con casi un mes de retraso y que tal omisión en las notificaciones era incompatible con el principio de equidad del debido proceso de ley.

En su solicitud de reconsideración, Cortés González argumentó, además, que la notificación fuera de plazo de las

---

[24] Entrada Núm. 34 del Caso Núm. BY2024CV00352 en el SUMAC.
[25] Entrada Núm. 33 del Caso Núm. BY2024CV00352 en el SUMAC.

mociones mencionadas vulneró directamente su derecho a tomar conocimiento oportuno de los incidentes procesales que le afectaban, impidiendo que se pudiera oponer a la solicitud de anotación de rebeldía y a presentar sus defensas. Su representante legal destacó que Cortés González era una persona de edad avanzada, con diagnóstico de demencia y Alzheimer, por lo que la omisión en la notificación de escritos e incidentes procesales a una persona con discapacidad o incapacidad mental generaba una vulneración a su derecho de acceso a la justicia y a un debido proceso. Sostuvo que la *Sentencia en Rebeldía* no debía prevalecer debido a las graves irregularidades que afectaron su derecho a ser notificada y a defenderse. En virtud de lo anterior, solicitó que se reconsiderara el referido dictamen, se dejara sin efecto y se le concediera un término de veinte (20) días para contestar la acción de epígrafe.

En desacuerdo, el 18 de junio de 2025, MAM replicó.[26] En esencia, planteó que, conforme fue certificado en la *Moción en Solicitud de Anotación de Rebeldía* presentada el 16 de mayo de 2025, se remitió la notificación de esta el mismo día de su presentación. Argumentó que, de los sobres que contenían las mociones en cuestión, se podía constatar que estos contaban con franqueos fechados el 16 y 23 de abril de 2025, respectivamente, días en los que certificó que fueron depositados en el buzón del correo. Planteó que no tenía control sobre la fecha en que el correo postal tramitara o remitiera la correspondencia depositada en los buzones postales, así como tampoco era responsable del matasello o la fecha en que los mismos fueran recibidos. Por otro lado, alegó que del expediente de autos no surgía documento o prueba fehaciente que demostrara que Cortés González tuviera demencia y

---

[26] Entrada Núm. 36 del Caso Núm. BY2024CV00352 en el SUMAC.

Alzheimer o que hubiere sido declarada incapaz judicialmente. Asimismo, arguyó que la solicitud de reconsideración promovida por Cortés González no justificaba la concesión del remedio solicitado. Según adujo, había cumplido con el debido proceso de ley, toda vez que le notificó las mociones en cuestión oportunamente a Cortés González. Además, argumentó que Cortés González había sido emplazada personalmente, tenía pleno conocimiento de la acción incoada en su contra y falló en presentar su alegación responsiva dentro del término provisto por Ley. Resaltó que los procedimientos se encontraban paralizados por esta haberse acogido a una alternativa de mitigación de pérdidas de extensión de riesgos. En vista de ello, solicitó que se declarara No Ha Lugar la solicitud de reconsideración promovida por Cortés González y se mantuvieran paralizados los procedimientos.

Evaluadas las posturas de las partes, el 20 de junio de 2025, el Tribunal de Primera Instancia emitió y notificó una *Resolución Interlocutoria*, mediante la cual declaró No Ha Lugar la solicitud de reconsideración presentada por Cortés González.[27]

Inconforme, el 21 de julio de 2025, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló el siguiente error:

> Erró el Honorable Tribunal de Primera Instancia al no reconsiderar la sentencia dictada en rebeldía, a pesar de que la parte demandante no cumplió con notificar adecuadamente las mociones solicitando la anotación de rebeldía y la sentencia en rebeldía, conforme a las exigencias de las Reglas 45.3 y 45.5 de Procedimiento Civil. Esta omisión constituyó una violación al debido proceso de ley procesal que ampara a todo ciudadano.

En cumplimiento con nuestra *Resolución* del 14 de agosto de 2025, la parte apelada compareció mediante *Alegato en Oposición a Apelación* el 20 del mismo mes y año.

---

[27] Entrada Núm. 37 del Caso Núm. BY2024CV00352 en el SUMAC.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

En nuestro ordenamiento jurídico es necesario que la notificación de las órdenes, resoluciones y sentencias emitidas por los tribunales, así como las mociones presentadas por las partes, se realicen de forma adecuada. *Berrios Fernández v. Vázquez Botet*, 196 DPR 245, 250 (2016). Ello, pues así el debido proceso de ley en su vertiente procesal lo exige. *Dávila Pollock et als. v. R.F. Mortgage*, 182 DPR 86, 94 (2011). En armonía con lo antes expuesto, el Tribunal Supremo de Puerto Rico ha explicado que "[l]a notificación adecuada de una parte es aquella que se dirige específicamente a la parte o a su representación legal". *R & G Mortgage v. Arroyo Torres y otros*, 180 DPR 511, 525 (2010).

En ese sentido, la Regla 67.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 67.1, dispone que se notificará a todas las partes toda orden que emita el tribunal y todo escrito que presente las partes. Asimismo, la notificación se efectuará el mismo día en que se presente el escrito o emite la orden.

Conforme al lenguaje de la Regla 67.1 de Procedimiento Civil, *supra,* el deber de notificar no se circunscribe únicamente al tribunal, sino que las partes también están obligadas a notificar todo escrito que estas presenten. Por ello se entiende: (i) todas las alegaciones; (ii) todas las mociones que las reglas no indiquen pueden ser consideradas *ex parte*; (iii) todo escrito presentado al tribunal, y (iv) todo escrito relacionado con el descubrimiento de prueba. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2802, págs. 212-213.

En cuanto a la forma de hacer la notificación, la Regla 67.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 67.2, dispone que:

Siempre que una parte haya comparecido representada por abogado o abogada, la notificación será efectuada al abogado o abogada, a menos que el tribunal ordene que la notificación se efectúe a la parte misma. La notificación al abogado o abogada o a la parte se efectuará entregándole copia o remitiéndola por correo, fax o medio electrónico a la última dirección que se haya consignado en el expediente por la parte que se autorrepresenta o a la dirección del abogado o abogada que surge del registro del Tribunal Supremo para recibir notificaciones, en cumplimiento con la Regla 9 de este apéndice. Si la dirección se desconoce, se notificará de ello al tribunal con copia del escrito de que se trate.

Entregar una copia conforme a esta regla significa ponerla en manos del abogado o abogada o de la parte, o dejarla en su oficina en poder de su secretario(a) o de otra persona a cargo de [e]sta. De no haber alguien encargado de la oficina, puede dejarla en algún sitio conspicuo de la misma, o si la oficina está cerrada o la persona a ser notificada no tiene oficina, dejándola en su domicilio o residencia habitual en poder de alguna persona que no sea menor de 18 años que resida allí. **La notificación por correo quedará perfeccionada al ser depositada en el correo o al ser enviada vía fax o por correo electrónico**. (Énfasis nuestro).

En cuanto a la jurisprudencia interpretativa sobre el perfeccionamiento de la notificación al depositarse en el correo regular, nos referiremos a *Ramos v. Condominio Diplomat,* 117 DPR 641, 643-645 (1986). En dicho caso nuestro Tribunal Supremo atendió una controversia sobre el perfeccionamiento de la notificación mediante el depósito en el correo. En aquella ocasión, se interpretó un lenguaje contenido en la anterior Regla 53.3 de Procedimiento Civil de 1958 sobre las notificaciones. En particular, interpretó la frase "al ser depositada en el correo", la cual es idéntica a la última oración de la vigente Regla 67.2 de Procedimiento Civil de 2009, *supra.* Es decir, dicha jurisprudencia nos ayuda a establecer la fecha de notificación con confiabilidad y certeza cuando se utiliza el correo ordinario, en vez, del correo certificado. Este último mecanismo, a saber, el correo certificado establece de manera cumplida y sin lugar a dudas la fecha del depósito en el correo. **Al utilizar el correo ordinario lo crucial es probar la fecha del depósito en el correo**. Dicho caso establece que para demostrar

la fecha del depósito en el correo se requiere prueba suficiente. Además, **el caso distingue el sello del franqueo postal mediante máquina pre-pagada y el matasello del correo**. Veamos.

Al pautar la juridicidad y alcance de la práctica forense sobre la notificación conforme las normas procesales vigentes, el Tribunal Supremo apuntó que:

> En lo pertinente, **notamos que dicho sobre tiene dos impresos. Uno producido en letras rojas por un metro postal (*postal meter*) de los que se tienen para uso interno y doméstico en las oficinas y es susceptible de cambiarse sus fechas. El otro, propiamente es el matasellos del sistema de correo federal, impreso en letras negras, con que se inutiliza el sello del documento. Nos aduce que lo determinante es este matasello, correspondiente al correo federal. Tiene razón.**
>
> **La fraseología y espíritu en que están cimentadas las reglas procesales tienen como criterio rector el *depósito en el correo* en este tipo de notificación. Razones prácticas, de claro entendimiento, impiden que aceptemos como fecha de notificación postal, los sellos, sean de tipo que se adhiere o de los que se imprimen mediante el referido metro postal. <u>Lo decisivo es la fecha del matasello [del correo federal] que constituye la prueba real, de ordinario coetánea, del depósito en el correo</u>.** *Ramos v. Condominio Diplomat*, supra, págs. 644-645. (Énfasis nuestro).

Es decir, la mejor prueba que tiene una parte que opta por depositar mediante correo regular u ordinario, en vez, de correo certificado, para la corroboración de la fecha de notificación de algún escrito es el matasello del correo federal impreso en el sobre en que se cursó el escrito en cuestión. El matasello del correo federal constituye la fecha del perfeccionamiento del depósito en el correo.

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

### III

Como único señalamiento de error, la parte apelante plantea que el Tribunal de Primera Instancia erró al no reconsiderar la sentencia dictada en rebeldía, a pesar de que la parte apelada no cumplió con notificar adecuadamente las mociones solicitando la

anotación de rebeldía y la sentencia en rebeldía, conforme a las exigencias de las Reglas 45.3 y 45.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.3 y 45.5. Sostiene que dicha omisión constituyó una violación al debido proceso de ley procesal que ampara a todo ciudadano. Hemos evaluado cuidadosamente el expediente ante nuestra consideración y entendemos que, en efecto, el foro primario incidió en su proceder. Nos explicamos.

Sabido es que la notificación de las mociones presentadas por las partes se debe realizar de forma adecuada y el mismo día en que esta se presenta ante el tribunal. En ese sentido, nuestro ordenamiento jurídico reconoce que tal notificación se puede hacer por distintos medios, ente ellos por correo ordinario. En particular, la notificación por correo quedará perfeccionada al ser depositada en el correo. Por lo tanto, al utilizar el correo ordinario, lo crucial es probar la fecha del depósito en el correo mediante prueba suficiente. En tal ejercicio, es necesario distinguir entre el sello del franqueo postal mediante máquina pre-pagada y el matasello del correo federal. Nuestro Tribunal Supremo hizo tal análisis y concluyó que lo determinante es el matasello correspondiente al correo federal, impreso en letras negras, el cual constituye la prueba real del depósito en el correo. El Alto Foro explicó que el sello producido en letras rojas por un metro postal (en lugar de un sello que se adhiere al sobre) era utilizado de forma interna y doméstica en las oficinas, lo cual hace que la fecha sea susceptible a cambio.

En el caso de autos, la parte apelada optó por utilizar el correo ordinario para notificarle a la parte apelante las solicitudes de la anotación de rebeldía y sentencia. Al examinar los sobres en cuestión, surge que el matasello correspondiente al correo federal tiene fecha del 22 de mayo de 2025. Dicha fecha constituye el depósito en el correo, según requerido por las Reglas de Procedimiento Civil. Es decir, la parte apelante fue notificada de las

mociones que tuvieron como consecuencia la disposición del caso con posterioridad a la notificación de la *Sentencia en Rebeldía* aquí apelada. Contrario a lo propuesto por el apelado, la fecha que tiene el sello producido en letras rojas no certifica que ese fuera el día en que se depositó en el correo las mociones en cuestión, pues ello solo evidencia que en esa fecha se realizó el pago del sello necesario para que se brinden los servicios de correspondencia, mas no prueba que en esa fecha el correo postal federal recibiera la carta, por lo que no constituye prueba suficiente, según requerido por la jurisprudencia interpretativa. Conforme a lo anterior, colegimos que las mociones sobre la anotación de rebeldía promovidas por la parte apelada fueron notificadas el 22 de mayo de 2025, con posterioridad a la notificación de la *Sentencia en Rebeldía* que nos ocupa.

Luego de un estudio sosegado del expediente ante nos, se desprende que el trámite procesal fue paralizado en varias ocasiones y referido al Centro de Mediación de Conflictos del Poder Judicial. En las instancias en que el proceso dejó de estar paralizado, el tribunal únicamente ordenó la continuación de los procedimientos, sin especificar en sus dictámenes cuál era el proceso a seguir como, por ejemplo, concederle a la parte apelante el término correspondiente para presentar su alegación responsiva. Además, surge que, cuando la parte apelada instó la primera solicitud de anotación de rebeldía, el caso se encontraba paralizado. Asimismo, cuando el apelado reiteró su solicitud, no transcurrió el término necesario para que la parte apelante presentara su postura, ni el tribunal le otorgó un término para ello. En cambio, el foro *a quo* anotó la rebeldía de la apelante al día siguiente de solicitada la sentencia en rebeldía y dictó la determinación que nos ocupa doce (12) días después. Por lo tanto, la parte apelante no tuvo oportunidad de comparecer y expresarse en cuanto a esas mociones, aun si estas últimas se hubieran notificado oportunamente,

violentándose así el debido proceso de ley. En conclusión, se cometió el error señalado.

En vista de lo anterior, concluimos que el Tribunal de Primera Instancia incidió en su determinación, por lo que procede la revocación de la *Sentencia en Rebeldía* apelada y concederle a la parte apelante el término de veinte (20) días para presentar su alegación responsiva ante el foro de origen mediante orden dictada por dicho foro a esos efectos. Ello, una vez el foro primario levante la paralización de los procedimientos que actualmente permanece vigente.

**IV**

Por las razones que anteceden, revocamos el dictamen apelado y devolvemos el caso al foro primario para la continuación de los procedimientos —una vez se levante la paralización vigente— conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones